John M. Toriello
Marc L. Antonecchia
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007
(212) 513-3200

Attorneys for Plaintiff
EAST Trust – Sub 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

EAST TRUST – SUB 12,

                                  Plaintiff,

     - against -

AVOLAR AEROLINEAS, S.A. DE C.V.,

                                  Defendant.

08 Civ. _____ ( ) ( )

_____

## DECLARATION OF ARTURO SORT DE SANZ
## IN SUPPORT OF PLAINTIFF'S APPLICATION FOR A
## TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

1.    I am a subcontractor to Jet Research Aviation Consultants, which has been retained by EAST Trust – Sub 12 ("EAST Trust") to provide technical consultant services to EAST Trust concerning a certain Boeing Model 737-3B7 aircraft, bearing manufacturer's serial number 23377 (the "Aircraft"). The information contained herein is based on my own personal knowledge, or on documents which I maintain in the regular course of business, except as to those matters which are stated to be upon information and belief.

2.    I have worked in the aviation industry since 1985 as a mechanic, quality control inspector, and material planner. Since 2000, I have worked as an independent consultant, among other things, managing aircraft lease returns and conducting the necessary review of aircraft

records. I have acted as an on-site representative of lessors and lessees for various aircraft, including the Boeing 727, 737, 757, and 767, MD 80 and 90, and Airbus A300 and A320 series aircraft.

3. At the request of the lessor of the Aircraft, I have been onsite in Tijuana, Mexico, Avolar's base of operations, since May 18, 2008 for the purpose of auditing the records of the Aircraft and to observe Avolar's maintenance of the Aircraft.

4. During my time onsite, the Aircraft has been flown in commercial operations between Tijuana and other locations in Mexico, including Puebla and Guadalajara. I estimate that there have been 17 flights since June 5, 2008.

**Avolar's Failure to Cooperate With EAST Trust**

5. It is my understanding that EAST Trust issued a Notice of Cancellation dated June 5, 2008. Since that time, Avolar has essentially ceased cooperating with me as the Lessor's consultant. Beginning on June 11, 2008, I have been denied access to the hangar where the Aircraft is housed and have not been able to review the records of the Aircraft. My most recent attempt to visit the Aircraft was on June 23, 2008. Avolar's Vice President of Maintenance, Karol Horvath, has told me that I am being denied access due to EAST Trust's position that Avolar has defaulted under the lease.

**Avolar's Financial Condition**

6. During communications with Mr. Horvath, I have inquired about the outstanding amounts due to EAST Trust. In a meeting in his office a few days after EAST Trust issued the Notice of Cancellation, Mr. Horvath informed me that Avolar had not paid the salaries of its employees and would certainly not be able to make payments to third parties. Employees

working in the engineering and planning departments have advised me that they have not been paid for two months.

7. Both Mr. Horvath and David Gutierrez, Avolar's Director of Maintenance, have advised me that the airline owes significant amounts of money to third parties including for fuel, drainage, and water services.

**Lapses in Maintenance and Recordkeeping**

8. During my time onsite, I have observed poor maintenance and record keeping practices.

9. One particular maintenance issue may affect the airworthiness and safety of the Aircraft and its passengers. There has been ongoing leakage of blue chemical toilet water from the forward lavatory. The water leaks to the belly of the Aircraft. This leak has the potential of damaging the structural integrity of the bulkhead near the nose landing gear. Avolar has attempted to repair the leak no less than eight times without success.

10. It also appears that Avolar has not followed the rules and regulations of the Mexican civil aviation authority, the Dirección General de Aeronáutica Civil ("DGAC"), when returning the Aircraft to service following maintenance. For instance, recent maintenance required that the "black boxes" and other major computerized components be removed and reinstalled. Prior to returning the Aircraft to operations after such maintenance, I understand that the DGAC rules, like those of the FAA, require that Avolar receive a written Release to Service from the maintenance facility performing the work. In the case of this maintenance, there was no written Release to Service in the Aircraft Records provided to me by Avolar. When I questioned Manuel Tenorio, Avolar's Quality Control Supervisor, I was advised that the Aircraft was returned to operations based on a verbal authorization from the maintenance facility. Such

action is highly irregular in the commercial aviation industry due to the heavily regulated nature of the business and the need to have documentation particularly of maintenance actions.

11. In addition, Avolar may have signed off on the completion of a test on the pressure release latch assembly on the flight deck door without the test having actually been accomplished. This test is required by an Airworthiness Directive mandated by the civil aviation authority. In order for the test to be accomplished, a transportation plate must be removed from the door. I was informed by Felix Fonseca, one of Avolar's engineers, that the transportation plate has not been removed and that the test had not been performed.

Dated: Tijuana, Mexico
June 23, 2008

The foregoing is affirmed under penalty of perjury pursuant to 28 U.S.C. § 1746.

_____
Arturo Sort de Sanz

# 5417661_v4