JUDGE HOLWELL

'08 CIV 5698

John M. Toriello
Marc L. Antonecchia
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007

Attorneys for Plaintiff
EAST Trust – Sub 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EAST TRUST – SUB 12,                              08 Civ. _____ (      ) (      )

                        Plaintiff,

        - against -

AVOLAR AEROLINEAS, S.A. DE C.V.,

                        Defendant.

---

## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS APPLICATION FOR A TEMPORARY
## RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

Of Counsel:

John M. Toriello
Marc L. Antonecchia

**HOLLAND & KNIGHT** LLP

195 Broadway
New York, New York 10007-3189

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ..................................................................................... 1

A.   The Lease ................................................................................................. 1
B.   Events of Default .................................................................................... 2
C.   Notices of Default and Notice of Cancellation ..................................... 4
D.   EAST Trust Has and Will Continue to Suffer Irreparable Injury ....................................... 4
     1.   Avolar's Failure to Cooperate With Lessor............................................ 5
     2.   Avolar's Financial Condition ................................................................. 5
     3.   Lapses in Maintenance and Recordkeeping............................................ 6

ARGUMENT
EAST TRUST IS ENTITLED TO A TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION .......................................................... 9

A.   EAST Trust Has Both a Contractual and Statutory Right to Immediate
     Possession of the Aircraft ...................................................................... 10
B.   EAST Trust Satisfies the Standards for a Preliminary Injunction .................................... 12
     1.   EAST Trust Has Suffered and Continues to Suffer Irreparable Harm Because the
     Aircraft Has Not Been Returned................................................................. 12
     2.   EAST Trust Will Succeed on the Merits ............................................... 15
          a.   EAST Trust Will Prevail on Its Breach of Contract Claims................................. 15
          b.   EAST Trust Will Prevail on Its Remaining Causes of Action............................... 15
     3.   The Balance of Equities Weighs Substantially in Favor of EAST Trust.................... 17
     4.   EAST Trust Should Not Be Required To Post A Bond............................................. 18

CONCLUSION...................................................................................................... 19

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Air Transp. Int'l Ltd. Co. v. Aerolease Fin. Group, Inc.*,
  993 F. Supp. 118 (D. Conn. 1998)...................................................................12

*Brenntag Int'l Chemicals, Inc. v. Bank of India*,
  175 F.3d 245 (2d Cir. 1999).........................................................................13

*Briarpatch Ltd. v. Pate*,
  81 F. Supp. 2d 509 (S.D.N.Y. 2000)...............................................................16

*Clarkson Co. v. Shaheen*,
  544 F.2d 624 (2d Cir. 1976).........................................................................18

*Connecticut Nat'l Bank v. Trans World Airlines*,
  762 F. Supp. 76 (S.D.N.Y. 1991) ..................................................................11

*Cosgrove v. Bd. of Educ. of the Niskayuna Cent. Sch. Dist.*,
  175 F. Supp. 2d 375 (N.D.N.Y. 2001)...........................................................18

*Doctor's Assocs., Inc. v. Stuart*,
  85 F.3d 975 (2d Cir. 1996)...........................................................................18

*Drobbin v. Nicolet Instrument Corp.*,
  631 F. Supp. 860 (S.D.N.Y. 1986) ...........................................................13, 14

*Evergreen Int'l Airlines, Inc. v. Pan American World Airways, Inc.*,
  46 F.3d 1140 (9th Cir. 1995) .......................................................................10

*Int'l Controls Corp. v. Vesco*,
  490 F.2d 1334 (2d Cir. 1974).......................................................................18

*Otokoyama Co. v. Wine of Japan Import, Inc.*,
  175 F.3d 266 (2d Cir. 1999).........................................................................12

*Thayer v. Dial Indus. Sales, Inc.*,
  85 F. Supp. 2d 263 (S.D.N.Y. 2000)...............................................................16

*Tough Traveler, Ltd. v. Outbound Prods.*,
  60 F.3d 964 (2d Cir. 1995)...........................................................................12

*Waldman Publ'g Corp. v. Landoll, Inc.*,
  43 F.3d 775 (2d Cir. 1994)...........................................................................12

**STATE CASES**

*Vigilant Ins. Co. of Am. v. Hous. Auth. of City of El Paso,*
    87 N.Y.2d 36 (1995) ...........................................................................................................16

*Walsh v. Design Concepts, Ltd.,*
    221 A.D.2d 454, 633 N.Y.S.2d 579 (2d Dept. 1995) .............................................................12

## PRELIMINARY STATEMENT

Plaintiff EAST Trust – Sub 12 ("EAST Trust") respectfully submits this Memorandum of Law, together with the Declarations of Brian DiSanto dated June 24, 2008 ("DiSanto Decl.") and Arturo Sort de Sanz dated June 23, 2008 ("Sort de Sanz Decl.") in support of its application by Order to Show Cause for a temporary restraining order and preliminary injunction, pursuant to Federal Rule of Civil Procedure 65, requiring defendant Avolar Aerolineas, S.A. de C.V. ("Avolar") to ground the Aircraft that is the subject of the Complaint and defined herein, and return the Aircraft and Aircraft Records to EAST Trust.

As discussed fully in the DiSanto and Sort de Sanz Declarations, Avolar is an air carrier that entered into a lease for the use of the Aircraft. Despite its absolute and unconditional obligations to perform under the lease, Avolar has failed and refused to make certain payments and has defaulted under the lease. Despite due demand, Avolar has failed to return the Aircraft to EAST Trust and is therefore wrongfully detaining the Aircraft and Aircraft Records while continuing to use and operate the Aircraft without payment to EAST Trust. EAST Trust has been and will continue to suffer irreparable harm if this Court does not grant this application for a temporary restraining order and preliminary injunction because the value of the Aircraft continues to depreciate while Avolar continues to use the Aircraft without performing its obligations under the Lease.

## STATEMENT OF FACTS

**A.      The Lease**

EAST Trust, as lessor, and Avolar, as lessee entered into an Amended and Restated Aircraft Lease Agreement dated May 2, 2006 ("Lease") with respect to a certain Boeing Model 737-3B7 aircraft bearing manufacturer's serial number 23377, together with two CFM

International Inc. Model CFM56-3B2 engines bearing manufacturer's serial numbers 720831 and 721127 (hereinafter, the "Aircraft"). DiSanto Decl., ¶¶ 5, 6. The Aircraft was delivered to and irrevocably accepted by Avolar on the Delivery Date (as that term is used in Schedule 1 in the Lease) and the Certificate of Acceptance, dated May 8, 2008, evidencing such acceptance under the Original Lease (as that term is defined in Schedule 1 of the Lease) was duly executed by Avolar. DiSanto Decl., at Exh.B.

Pursuant to Section 4 and Schedule 3 of the Lease, Avolar agreed to pay Rent, which includes Basic Rent and Supplemental Rent (as those terms are defined in Schedule 1 of the Lease), and Maintenance Reserves (as that term is defined in Schedule 1 of the Lease), to Lessor on each "Basic Rent Payment Date" for each of the "Basic Rent Payment Periods" (as those terms are used in Section 4 and Schedule 1 of the Lease) during the Term of the Lease. DiSanto Decl., ¶¶ 9, 10. Pursuant to Section 4.2 of the Lease, Avolar agreed to pay, as Supplemental Rent, interest at the Incentive Rate (as that term is defined in Schedule 1 of the Lease) on any part of any installment of Rent or Maintenance Reserves not paid on the due date. DiSanto Decl., ¶ 12.

**B.    Events of Default**

Under the Lease, Avolar is obligated to pay Rent, Supplemental Rent, and other payments, for its use of the Aircraft. Such obligations are absolute and unconditional, and, pursuant to Section 17.14 of the Lease, time is of the essence to perform such payment obligations. DiSanto Decl., ¶ 13.

Pursuant to Section 15(a) of the Lease, Avolar's failure to pay Rent, Supplemental Rent, Maintenance Reserves, or any other amount payable under the Lease on the due date constitutes an Event of Default (as those terms are used in Schedule 1 of the Lease). DiSanto Decl., ¶ 14. Notwithstanding Avolar's absolute and unconditional obligations, Avolar has failed and refused

to make rent payments due under the Lease and therefore is in default under the Lease. Pursuant to Schedule 6, paragraph 7 of the Lease, if Avolar fails to return the Aircraft upon expiration or cancellation of the Lease in the return condition, the obligations of Avolar continue and are not considered a renewal of the terms of the Lease or waiver of the rights of EAST Trust. During such continued use, Basic Rent continues at the rate of $1/10^{th}$ of the last full payment of Basic Rent for each day until the Aircraft is delivered to EAST Trust. DiSanto Decl., ¶ 16.

To date, Avolar has failed to pay Basic Rent in the amount of at least $529,820.00 and Maintenance Reserves in the amount of at least $543,964.94. DiSanto Decl., ¶ 17. Avolar has failed to pay, as Supplemental Rent, interest that has accrued on the unpaid amounts of Basic Rent and Maintenance Reserves. To date, the total amount due and owing to EAST Trust is at least $1,073,784.94, excluding interest. Interest continues to accrue. DiSanto Decl., ¶ 19.

Pursuant to Section 16.1 of the Lease, upon the occurrence of an Event of Default, EAST Trust is entitled to, among other things: cancel the leasing of the Aircraft under the Lease, and by appropriate notice require Avolar to deliver the Aircraft to EAST Trust pursuant to the provisions of Section 14 and Schedule 6 of the Lease; take immediate possession of the Aircraft; enforce the Lease by appropriate court action; and recover damages. DiSanto Decl., ¶ 20.

Pursuant to Section 16.1(b) of the Lease, following the cancellation of the leasing of the Aircraft during the Term due to an Event of Default, Lessor is entitled to liquidated damages (as that term is defined in Schedule 1 of the Lease), which includes, among other things, all Losses incurred by EAST Trust in connection with (a) recovering or having possession of the Aircraft; (b) recovering Rent or other amounts due under the Lease; (c) returning the Aircraft to the condition required under the Lease and in accordance with the provisions of Part B of Schedule 6

-3-

of the Lease; and (d) exercising or enforcing any of its rights under any Relevant Documents (as that term is defined in Schedule 1 of the Lease) to which Avolar is a party.  DiSanto Decl., ¶ 21.

Pursuant to Section 16.2 of the Lease, upon the occurrence of an Event of Default, EAST is entitled to, among other things, collect reasonable legal fees and other costs and expenses incurred by the occurrence of any Event of Default or the exercise of remedies, including all costs and expenses incurred in connection with the return of the Aircraft.  DiSanto Decl., ¶ 22.

Pursuant to Section 16.3 of the Lease, the rights of EAST Trust under the lease are cumulative.  DiSanto Decl., ¶ 23.

**C.**     **Notices of Default and Notice of Cancellation**

By letters dated April 16, 2008 and May 27, 2008, pursuant to the Lease, EAST Trust gave notice to Avolar of Avolar's defaults and demanded immediate payment of the past due Rent and Supplemental Rent plus Interest owing under the Lease.  DiSanto Decl., ¶ 24.  By letter dated June 5, 2008, EAST Trust cancelled the leasing of the Aircraft under the Lease and demanded that Avolar return the Aircraft and Aircraft Records to EAST Trust.  DiSanto Decl., ¶ 25.  To date, Avolar has failed to pay the outstanding amounts due under the Lease and has failed to return the Aircraft to EAST Trust.  DiSanto Decl., ¶ 26.

**D.**     **EAST Trust Has and Will Continue to Suffer Irreparable Injury**

EAST Trust has been, and will continue to be, irreparably harmed because Avolar has used and continues to use the Aircraft without performing its obligations under the Lease – including making timely payments of Rent, Maintenance Reserves Supplemental Rent.   DiSanto Decl., ¶ 27.  This obligation of Avolar to perform its obligations and make timely payments is absolute and unconditional and is not affected by any event or circumstance whatsoever.  DiSanto Decl., ¶ 29.  Despite the notice of Avolar's defaults and demand for payments due under

the Lease, Avolar has failed to honor EAST Trust's requests and make timely payments of the amounts outstanding.  DiSanto Decl., ¶ 28.

It appears from Avolar's failure to make timely payments, even after a demand for such payments, that Avolar is experiencing financial difficulties and either is unwilling or unable to pay its debts.  DiSanto Decl., ¶ 30.  There also is no evidence that Avolar ever will be able make good on its outstanding debts and obligations.  Even worse, it appears that Avolar is taking any and all steps to postpone or avoid the return of the Aircraft to EAST Trust.   DiSanto Decl., ¶ 30.

EAST Trust has had an inspector onsite in Tijuana, Mexico since May 18, 2008 for the purpose of auditing the records of the Aircraft and to observe Avolar's maintenance of the Aircraft.  Sort de Sanz Decl., ¶ 3.   During the inspector's time onsite, the Aircraft has been flown in commercial operations between Tijuana and other locations in Mexico, including Puebla and Guadalajara.  There have been approximately 17 flights since June 5, 2008.  Sort de Sanz Decl., ¶ 4.

### 1.    Avolar's Failure to Cooperate With Lessor

Since EAST Trust issued the Notice of Cancellation, Avolar has essentially ceased cooperating with EAST Trust's consultant.  Sort de Sanz Decl., ¶ 5.  Beginning on June 11, 2008, the consultant has been denied access to the hangar where the Aircraft is housed and have not been able to review the records of the Aircraft.  Sort de Sanz Decl., ¶ 5.  His most recent attempt to visit the Aircraft was on June 23, 2008.  Avolar's Vice President of Maintenance, Karol Horvath, told the consultant that he was being denied access due to EAST Trust's position that Avolar has defaulted under the lease.  Sort de Sanz Decl., ¶ 5.

### 2.    Avolar's Financial Condition

During communications with Mr. Horvath,  the consultant inquired about the outstanding amounts due to EAST Trust.  In a meeting in his office a few days after EAST Trust issued the

Notice of Cancellation, Mr. Horvath informed the consultant that Avolar had not paid the salaries of its employees and would certainly not be able to make payments to third parties. Sort de Sanz Decl., ¶ 6. Employees working in the engineering and planning departments have advised the consultant that they have not been paid for two months. Sort de Sanz Decl., ¶ 6. Both Mr. Horvath and David Gutierrez, Avolar's Director of Maintenance, have advised the consultant that the airline owes significant amounts of money to third parties including for fuel, drainage, and water services. Sort de Sanz Decl., ¶ 7.

### 3.    Lapses in Maintenance and Recordkeeping

During the consultant's time onsite, he has observed poor maintenance and record keeping practices. There has been ongoing leakage of blue chemical toilet water from the forward lavatory. The water leaks to the belly of the Aircraft. This leak has the potential of damaging the structural integrity of the bulkhead near the nose landing gear. Avolar has attempted to repair the leak no less than eight times without success. Sort de Sanz Decl., ¶¶ 8, 9.

It also appears that Avolar has not followed the rules and regulations of the Mexican civil aviation authority, the Dirección General de Aeronáutica Civil ("DGAC"), when returning the Aircraft to service following maintenance. For instance, recent maintenance required that the "black boxes" and other major computerized components be removed and reinstalled. In the case of this maintenance, there was no written Release to Service in the Aircraft Records provided to me by Avolar. Sort de Sanz Decl., ¶ 10.    When the consultant questioned Avolar's Quality Control Supervisor, he was advised that the Aircraft was returned to operations based on a verbal authorization from the maintenance facility. Such action is highly irregular in the commercial aviation industry due to the heavily regulated nature of the business and the need to have documentation particularly of maintenance actions. Sort de Sanz Decl., ¶ 10.

In addition, Avolar may have signed off on the completion of a test on the pressure release latch assembly on the flight deck door without the test having actually been accomplished. This test is required by an Airworthiness Directive mandated by the civil aviation authority. In order for the test to be accomplished, a transportation plate must be removed from the door. EAST Trust's consultant was informed by Felix Fonseca, one of Avolar's engineers, that the transportation plate has not been removed and that the test had not been performed. Sort de Sanz Decl., ¶ 11.

The Aircraft is extremely valuable. It currently has a net book value in excess of $8 million. DiSanto Decl., ¶ 32. Furthermore, the Aircraft requires extensive, regular maintenance in order to maximize its value and maintain it in proper condition. DiSanto Decl., ¶ 32. Given the apparently precarious financial condition of Avolar and the reports from EAST Trust's onsite consultant, there is no assurance that the Aircraft is being properly maintained. DiSanto Decl., ¶ 32.

Failure to properly maintain the Aircraft can have a dramatic impact on its value. DiSanto Decl., ¶ 33. Used aircraft may vary in price by several million dollars, depending on the quality of the maintenance program. DiSanto Decl., ¶ 33. According the reports from EAST Trust's consultant, Avolar continues to fly the Aircraft. Sort de Sanz Decl., ¶ 4. Because of the maintenance requirements for the Aircraft, each time it is flown, it diminishes in value, and as a result, the cost to bring it into suitable condition for resale or re-lease increases with each hour of use. DiSanto Decl., ¶ 34. The impact of continued use on the value of the Aircraft is particularly great because relevant regulations and the manufacturer's recommended maintenance program require that the Aircraft undergo regular checks depending on how many hours or cycles (each takeoff and landing counts as one cycle) it has flown. DiSanto Decl., ¶ 35. In addition, many of

the parts used on the Aircraft are "life-limited," which means they must be replaced or refurbished after the Aircraft has flown a certain number of hours or cycles. DiSanto Decl., ¶ 35. If these parts are not replaced and refurbished as required, the integrity the Aircraft and the safety of its passengers may be in danger. DiSanto Decl., ¶ 35.

Because of the carrying costs of the Aircraft, it is imperative that it be redeployed as quickly as possible. DiSanto Decl., ¶ 36. Today, an aircraft can sit idle for an extended period of time before it can be redeployed. DiSanto Decl., ¶ 36. Even then, there is no assurance that the lease will be at a rate commensurate with the subject lease. DiSanto Decl., ¶ 36. The likelihood of the re-lease and redepolyment of the Aircraft is compromised greatly because the Aircraft continues to be used by Avolar and because Avolar has not returned the Aircraft to EAST Trust in the required return condition. DiSanto Decl., ¶ 37.

If Avolar continues to keep the Aircraft in contravention of the applicable Lease terms, and fails to pay and perform its obligations under the Lease, EAST Trust is at substantial risk to lose hundreds of thousands of dollars or more for which it is likely to receive no recompense. DiSanto Decl., ¶ 38. Worse still, as a result of the continued use of the Aircraft by Avolar, EAST Trust is at great risk of losing value in the Aircraft. DiSanto Decl., ¶ 38.

EAST Trust also is suffering irreparable harm because of Avolar's refusal to return all Aircraft Records. DiSanto Decl., ¶ 40. The Aircraft Records include, among other things, documents, manuals, airworthiness directives, maintenance records, and other technical records. DiSanto Decl., ¶ 40. The Aircraft cannot be redeployed without these Aircraft Records. DiSanto Decl., ¶ 41. Additionally, under FAA regulations, an airworthiness certificate will not issue without proper maintenance and other technical records that are required to be kept by the owner or operator of the Aircraft. DiSanto Decl., ¶ 41. Thus, if the Aircraft Records are not returned to

EAST Trust in accordance with the lease, EAST Trust will not be able to obtain an airworthiness certificate and redeploy the Aircraft.

There is no question that EAST Trust has a superior right of possession to the Aircraft and that the Aircraft is being wrongfully withheld by Avolar. DiSanto Decl., ¶ 39. As a result of these actions by Avolar, EAST Trust has suffered and continues to suffer irreparable harm.

## ARGUMENT

### EAST TRUST IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

EAST Trust has both a contractual and statutory right to the immediate possession of the Aircraft. Moreover, EAST Trust will continue to suffer irreparable harm if the Aircraft is not immediately returned to it. Accordingly, preliminary injunctive relief requiring Avolar to ground and return the Aircraft is warranted.

This Court has granted a similar application for a preliminary injunction against an aircraft carrier, Atlas Air, Inc. ("Atlas Air"), for default on its basic rent obligations under an aircraft lease in *Wells Fargo Bank Northwest, N.A. v. Atlas Air, Inc.*, 03 Civ. 1400 (S.D.N.Y. Jones, U.S.D.J.).[1] In issuing the preliminary injunction and ordering Atlas Air to return the aircraft and related aircraft records, the Court found:

> One, I don't see how the defendant who is being enjoined could be harmed . . . . There appears to be no contest with respect to likelihood of success on the merits here and I don't see how there could be because of the plain conditions of the agreement in this case, the lease agreement and the mortgage agreement itself. . . . [C]onsidering the defendant's financial condition and depreciation of the air[craft] while it is in [Atlas Air's] possession, I do believe there would be irreparable harm.

---

[1] Copies of the Preliminary Injunction and the transcript of the preliminary injunction hearing in the *Wells Fargo* action issued on March 27, 2003 and the Transcript of the preliminary injunction hearing are annexed hereto.

*Wells Fargo*, 03 Civ. 1400 (3/27/03 Tr. At 6, 8).

In this case, it is indisputable that Avolar has failed to make certain payments when due under the Lease, resulting in an Event of Default under the Lease. It also clear that EAST Trust has a high likelihood of success on the merits and that that there is no evidence that Avolar would be harmed by the grant of a preliminary injunction. Similar to plaintiff in the *Wells Fargo* matter, EAST Trust here is entitled to preliminary injunctive relief directing the immediate grounding and return of the Aircraft in accordance with the Lease.

### A.    EAST Trust Has Both a Contractual and Statutory Right to Immediate Possession of the Aircraft

The Lease defines an "Event of Default" as, among other things, Avolar's failure to "make any payment of Basic Rent, Interim Rent, Supplemental Rent, or Maintenance Reserves on the date the same is due and payable hereunder." DiSanto Decl., Exh. A  The Lease makes clear that EAST Trust has available to it various nonexclusive remedies in the event of Avolar's default.

Pursuant to Section 16 of the Lease, any Event of Default entitles EAST Trust to, among other things:  cancel the leasing of the Aircraft under the Lease, and by appropriate notice require Avolar to deliver the Aircraft pursuant to the provisions of Section 14 and Schedule 4 of the Lease; take immediate possession of the Aircraft; and recover damages.  DiSanto Decl., ¶ 20. Thus, based on the Lease, EAST Trust has the right to immediately repossess the Aircraft and may proceed by court action to enforce the Lease. *See Wells Fargo,* 03 Civ. 1400 (3/27/03 Tr. at 8) (finding plaintiff was entitled to a preliminary injunction based, in part, on the plain language of the lease agreement itself); *Evergreen Int'l Airlines, Inc. v. Pan American World Airways, Inc.*, 46 F.3d 1140 (9th Cir. 1995) (upholding district court's issuance of an injunction grounding aircraft based upon defendant's default under the terms of the lease).

-10-

The Lease clearly sets forth Avolar's obligations and provide for the return of the Aircraft upon the occurrence of any "Event of Default." These provisions were agreed upon by two sophisticated commercial parties, intimately familiar with the transaction, and bargaining at arms-length. Further, EAST Trust provided notice that it is entitled to exercise its remedies pursuant to the Lease on April 16, May 27, and June 5, 2008. DiSanto Decl., ¶¶ 24, 25. Despite its Lease obligations and this demand, Avolar still has failed to make the outstanding payments due under the Lease. Accordingly, consistent with the terms of the Lease, EAST Trust is entitled to the immediate grounding and return of its Aircraft. *See Connecticut Nat'l Bank v. Trans World Airlines*, 762 F. Supp. 76 (S.D.N.Y. 1991) (granting summary judgment after defendant defaulted on an equipment trust agreement involving sale and leaseback of ten commercial jet aircraft; court emphasized that defendant was bound by the terms of the lease agreement).

The Lease at issue in this case is governed by New York law.[2] In addition to a contractual right of repossession, under New York law, EAST Trust has the statutory right to take immediate possession of the Aircraft. Specifically, Section 2-A-523(1) of New York's Uniform Commercial Code ("UCC") provides, in part:

> (1) If a lessee . . . fails to make a payment when due . . . the lessee is in default under the lease contract and the lessor may:

> (c) . . . take possession of goods previously delivered . . . .

N.Y. U.C.C. § 2-A-523(1)(c).

Accordingly, because EAST Trust has both a contractual and statutory right to take possession of the Aircraft upon Avolar's default under the Lease, the Court should issue a

---

[2] Section 17.1 of the Lease provides that "Pursuant to and in accordance with Section 5-1401 of the New York General Obligations Law, Lessor and Lessee agree that this Lease shall in all respects be governed by, and construed in accordance with, the laws of the state of New York . . . ." DiSanto Decl. at Exh. B, § 17.1. The Certificate of Acceptance states: "This Certificate of Acceptance shall in all respects be governed by, and construed in accordance with, the laws of the State of New York." DiSanto Decl. at Exh. C, § 7.

temporary restraining order and preliminary injunction directing Avolar to ground and return the

Aircraft.

**B.      EAST Trust Satisfies the Standards for a Preliminary Injunction**

The standards for obtaining a preliminary injunction pursuant to Rule 65 of the Federal

Rules of Civil Procedure are well established:

> A party seeking a preliminary injunction must establish that 1)
> absent injunctive relief, it will suffer irreparable harm, and 2)
> either a) that it is likely to succeed on the merits, or b) that there
> are sufficiently serious questions going to the merits to make them
> a fair ground for litigation, and that the balance of hardships tips
> decidedly in favor of the moving party.

*See Otokoyama Co. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir. 1999);  *see also*

*Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 967 (2d Cir. 1995); *Waldman Publ'g*

*Corp. v. Landoll, Inc.*, 43 F.3d 775, 779-80 (2d Cir. 1994); *Air Transp. Int'l Ltd. Co. v. Aerolease*

*Fin. Group, Inc.*, 993 F. Supp. 118, 123 (D. Conn. 1998).  As discussed below, EAST Trust

meets all requirements of Rule 65.

**1.      EAST Trust Has Suffered and Continues to Suffer Irreparable
Harm Because the Aircraft Has Not Been Returned**

As set forth in the DiSanto Declaration, EAST Trust has and will continue to suffer actual

and imminent harm that cannot be compensated monetarily due to the failure of Avolar to meet

its obligations under the Lease.  *See Walsh v. Design Concepts, Ltd.*, 221 A.D.2d 454, 455, 633

N.Y.S.2d 579, 580 (2d Dept. 1995) ("Irreparable injury, for purposes of equity, has been held to

mean any injury for which money damages are insufficient.") (quotation marks omitted).

The injury is clearly irreparable because of the continued depreciation of the Aircraft.

The Aircraft requires regular and substantial expenditures for maintenance.  Failure to properly

maintain the Aircraft causes it to depreciate rapidly in value.  In *Wells Fargo*, the Court noted

-12-

that the depreciation of the aircraft while in the possession of the aircraft carrier constituted irreparable harm. *See Wells Fargo*, 03 Civ. 1400 (3/27/03 Tr. at 8).

By its failure to pay Rent and Maintenance Reserves, Avolar has acknowledged its inability to meet its financial obligations. Avolar's failure prompted EAST Trust to serve Avolar with Notices of Default and a Notice of Cancellation. DiSanto Decl., at Exhs. B, C, D. These letters, among other things, referred to the existence of the Lease and advised Avolar of its failure to make Rent and Supplemental Rent payments. These letters also advised Avolar of EAST Trust's right to exercise legal remedies under the Lease and also demanded immediate payment of the amounts outstanding and return of the Aircraft. Avolar has failed to honor these demands, yet continues to possess and use the Aircraft.

It is well established that a defendant's inability to answer in money damages because of its financial condition constitutes irreparable injury. Indeed, in *Wells Fargo*, the Court cited to Atlas Air's financial condition in support of its finding of irreparable injury. *Wells Fargo*, 03 Civ. 1400 (3/27/03 Tr. at 8); *see also Brenntag Int'l Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 250 (2d Cir. 1999) (inability to pay as basis for finding of irreparable injury); *Drobbin v. Nicolet Instrument Corp.*, 631 F. Supp. 860, 912 (S.D.N.Y. 1986) (stating that a preliminary injunction has been deemed necessary to protect the plaintiff from irreparable harm where, "as a practical matter, the defendant would not or could not respond fully for those damages").

In another similar case in the Southern District, *SW Holding Trust v. Southern Winds, S.A.*, 02 Civ. 5249 (S.D.N.Y. 2002 Casey, U.S.D.J.), the Court issued a preliminary injunction requiring an air carrier, who defaulted on its payment obligations under two Leases, to ground

the aircraft and return them to plaintiff.[3]  In determining that the plaintiff lessor would suffer

irreparable harm absent an injunction, the Court found:

> [I]t is undisputed that the defendant has not paid rent or
> maintenance reserves since November.  Notably defendant fails to
> give any assurance that it will ever do so and acknowledges that its
> financial situation is precarious.  [Citing Drobbin v. Nicolet
> Investment Corp., 631 F. Supp. 860 (S.D.N.Y. 1986) (granting
> preliminary injunction where defendant would not or could not
> respond fully for damages).]  Moreover, . . . the continued use of
> the aircraft decreases their resale price and it brings them closer to
> required maintenance and part replacement.

SW Holding Trust, 02 Civ. 5249 (8/12/02 Tr. at 4).  The Court in SW Holding Trust also rejected

defendant's argument that it should be allowed to keep the aircraft for 75 to 90 days when it

would replace them with cheaper models.  The Court stated:

> This would leave defendant in the catbird seat, in essence granting
> the free use of the aircraft for an extended period, again, with no
> guarantee of eventual payment.  There is simply no val[id] basis
> for doing so, because defendant does not have even an arguable
> right to continued possession of the aircraft.

Id. (8/12/02 Tr. at 4-5).

The financial condition of Avolar, like that of the air carriers in the Wells Fargo and SW

Holding Trust cases, is precarious.  Thus, Avolar has not paid the Rent and Maintenance

Reserves for the Aircraft.  As attested to by Mr. Sort de Sanz, Avolar's Vice President of

Maintenance has advised that Avolar has not paid its employees' salaries and this was confirmed

by various employees.  So too, Avolar's Director of Maintenance has advised that Avolar owes

significant amount of money to third parties for fuel, drainage, and water services.  Like the air

carriers in the Wells Fargo and SW Holding Trust cases, Avolar has neither satisfied its

contractual performance obligations or made its due payments, nor returned the Aircraft.

---

[3] A copy of the August 12, 2002 transcript of the Court's decision is annexed hereto.

Instead, Avolar continues to hold the Aircraft, thereby decreasing its resale value and depriving EAST Trust of the use of this valuable equipment. Accordingly, EAST Trust has established that it will suffer irreparable harm absent immediate injunctive relief.

### 2. EAST Trust Will Succeed on the Merits

#### a. EAST Trust Will Prevail on Its Breach of Contract Claims.

Avolar has not performed its obligations under the Lease. Avolar has ignored EAST Trust's demand for immediate payment and continues to use EAST Trust's property without paying compensation as required by the Lease. For this reason, EAST Trust has a substantial likelihood of success on the merits. *See Wells Fargo*, 03 Civ. 1400 (3/27/03 Tr. at 8) (finding that there was no contest with regard to likelihood of success on the merits and Court did not "see how there could be because of the plain conditions of the agreement in this case, the lease agreement and the mortgage agreement itself"); *SW Holding Trust*, 02 Civ. 5249 (8/12/02 Tr. at 3) (finding plaintiff made a clear showing of likelihood of success on the merits where defendant failed to make payment of rent and maintenance reserves, which pursuant to the clear terms of the lease agreements, constituted an event of default entitling plaintiff to retake possession of the aircraft). Accordingly, EAST Trust is entitled to an Order from the Court issuing a preliminary injunction that enforces the terms of the Lease and compels Avolar to surrender possession of the Aircraft and Aircraft Records.

#### b. EAST Trust Will Prevail on Its Remaining Causes of Action.

In addition to its claims for breach of the lease and for injunctive relief, in the Complaint, EAST Trust asserts causes of action against Avolar for conversion, unjust enrichment, and possession of the Aircraft. *See* Complaint. Inherent in each of these causes of action is that EAST Trust has been deprived of its rightful use and possession of the Aircraft without

compensation based on the wrongful actions of the Avolar in failing to return the Aircraft to EAST Trust.

Under New York law, the elements of conversion are (1) plaintiff's legal ownership or an immediate superior right of possession to specific, identifiable personal property, and (2) defendant's exercise of unauthorized dominion over the thing in question to the exclusion of plaintiff's rights. *See Briarpatch Ltd. v. Pate*, 81 F. Supp. 2d 509, 516-17 (S.D.N.Y. 2000); *see also Vigilant Ins. Co. of Am. v. Hous. Auth. of City of El Paso*, 87 N.Y.2d 36, 44 (1995).

With respect to the first element, because of Avolar's default and EAST Trust's rights and remedies under the Lease, EAST Trust has an immediate right of possession and Avolar has no right of possession. With respect to the second element, Avolar has exercised and continues to exercise dominion over the Aircraft despite the fact that it has not made Rent and Maintenance Reserves payments as required by the Lease. Thus, Avolar's actions are in direct contravention of EAST Trust's rights as owner of the Aircraft.

In order to establish a cause of action for unjust enrichment, plaintiff must demonstrate that (1) defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) circumstances were such that equity and good conscience require defendant to make restitution. *See Thayer v. Dial Indus. Sales, Inc.*, 85 F. Supp. 2d 263, 274 (S.D.N.Y. 2000). Here, through its rent-free operation and wrongful exercise of dominion over the Aircraft, Avolar has been, and will continue to be, unjustly enriched to the irreparable detriment of EAST Trust. Thus, the circumstances are such that equity requires that Avolar compensate EAST Trust for the unjustified use of its property. Accordingly, EAST Trust has demonstrated that it will succeed on its remaining claims against Avolar and, thus, is entitled to the immediate possession of the

Aircraft. Similarly, the facts surrounding Avolar's conversion and unjust enrichment also demonstrate that EAST Trust will succeed on its possession cause of action.

### 3.  The Balance of Equities Weighs Substantially in Favor of EAST Trust

Based on Avolar's actions, EAST Trust has been and will continue to be denied use of its property to its serious detriment and at a substantial financial cost. There is no question that EAST Trust, as Lessor, has a superior right of possession to the Aircraft. The Aircraft is extremely valuable; it is currently has a net book value in excess of $8 million  DiSanto Decl., ¶ 32. There is a grave risk that – given Avolar's financial condition evidenced by its failure to make rent payments even after due demand and failure to return the Aircraft as required by the Lease – the Aircraft is not, or will not be, properly maintained.

Failure to properly maintain the Aircraft can have a dramatic impact on its value to the irreparable detriment of EAST Trust. DiSanto Decl., ¶ 33. To the point, each time Avolar operates the Aircraft, the cost to bring it into condition for resale or re-lease increases with each hour of use. DiSanto Decl., ¶ 34. Avolar is directly benefiting from the continued unauthorized use of the Aircraft despite failing to pay Rent and Maintenance Reserves under the Lease. If Avolar continues to keep the Aircraft in contravention of the applicable Lease terms, and fails to pay and perform its obligations under the Lease, EAST Trust is at substantial risk to lose hundreds of thousands of dollars for which it is likely to receive no recompense. DiSanto Decl., ¶ 38. Worse still, as a result of the continued use of the Aircraft by Avolar, EAST Trust is at great risk of losing incompensable value in the Aircraft. DiSanto Decl., ¶ 34.

Thus, there can be no argument that Avolar will suffer any hardship or prejudice by being required to ground the Aircraft and surrender the property, to which it has no legal claim.

### 4.    EAST Trust Should Not Be Required To Post A Bond

Consistent with settled case law, EAST Trust should not be required to give any security as a prerequisite to the issuance of a temporary restraining order or preliminary injunction. Federal Rule of Civil Procedure 65(c) states, in pertinent part, "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, *in such sum as the court deems proper* . . . ". Fed. R. Civ. P. 65(c) (emphasis added).  Courts throughout this jurisdiction, have interpreted the clause "in such sum as the court deems proper," to mean that "the District Court is vested with wide discretion in the matter of security and it has been held proper for the court to require no bond." *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996) (no bond required prior to the issuance of preliminary injunction).

"A district court may dispense with the posting of security entirely where the parties sought to be enjoined or restrained 'have not shown that they will likely suffer harm absent the posting of a bond.'" *See Cosgrove v. Bd. of Educ. of the Niskayuna Cent. Sch. Dist.*, 175 F. Supp. 2d 375, 399 (N.D.N.Y. 2001) (quoting *Doctor's*, 85 F.3d at 985); *see also Clarkson Co. v. Shaheen*, 544 F.2d 624, 632 (2d Cir. 1976); *Int'l Controls Corp. v. Vesco*, 490 F.2d 1334, 1356 (2d Cir. 1974).

Here, Avolar will suffer no harm absent the posting of a bond.  It is indisputable that Avolar has not made Basic Rent, Maintenance Reserves, and Supplemental Rent payments in the aggregate amount of at least $1,073,784.94, excluding interest, and also is wrongfully detaining the Aircraft.  Accordingly, EAST Trust should not be required to post a bond.

## CONCLUSION

Based on the foregoing, plaintiff EAST Trust – Sub 12 respectfully requests that the Court issue a temporary restraining order and preliminary injunction in favor of EAST Trust:

1.    enjoining, during the pendency of this action, Avolar and its subsidiaries, officers, agents, employees, servants, attorneys, flight crews, and any other person who has actual notice of this Order from (a) operating or directing the operation of the Aircraft identified in the Complaint, other than for purposes of returning it to EAST Trust, but Avolar shall maintain the Aircraft as required by the terms of the Amended and Restated Aircraft Lease Agreement between the Plaintiff and the Defendant dated as of May 2, 2006, (b) filing or accepting a flight plan for the Aircraft identified in the Complaint, other than for purposes of returning it to EAST Trust; (c) requesting or receiving from the ground control permission to taxi on an active runway the Aircraft identified in the Complaint, other than for purposes of returning it to EAST Trust; and (d) requesting or receiving clearance from the tower and/or departure control for the Aircraft identified in the Complaint to take off, other than for purposes of returning it to EAST Trust; and

2.    directing Avolar and its subsidiaries, officers, agents, employees, servants, attorneys, flight crews, and any other person who has actual notice of this Order and control of the Aircraft to immediately return the Aircraft, which includes the Airframe, the Engine, the Parts, and the Aircraft Records (as those terms are defined in the Complaint; and

3.    reserving EAST Trust's claims for damages.

-19-

Dated:  New York, New York
        June 24, 2008

                                Respectfully submitted,

                                HOLLAND & KNIGHT LLP

                                By: _John M. Toriello_
                                    John M. Toriello
                                    Marc L. Antonecchia

                                195 Broadway
                                New York, New York 10007
                                (212) 513-3200

                                Attorneys for Plaintiff
                                EAST Trust – Sub 12

# 5412559_v2

-20-

MAR-28-2003  00:36        ON. BARBARA S. JONES                    212 805 6191     P.02/04

FAXED:  COUNSEL FOR PLTFF(S):
        COUNSEL FOR DFT(S):
        PLTFF PRO SE:
        DFT. PRO SE:
        DATE: 3/27/03
        BY:

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| WELLS FARGO BANK NORTHWEST, N.A., not in its individual capacity, but solely as Loan Trustee under a certain Loan and Security Agreement, | : | 03 Civ. 1400 ( BSJ) |
| | : | |
| Plaintiff, | : | **PRELIMINARY** |
| | : | **INJUNCTION ORDER** |
| - against - | : | |
| ATLAS AIR, INC., | : | |
| Defendant. | : | |

075427-5
FILE COPY
H G H & K
SERVED BY MAIL/HAND
4/3/2003

THIS MATTER having been opened to the Court upon the application of plaintiff Wells Fargo Bank Northwest, N.A. ("Wells Fargo"), not in its individual capacity, but solely as Loan Trustee under a certain Loan and Security Agreement, for entry of an Order, pursuant to Federal Rule of Civil Procedure 65, enjoining Atlas Air, Inc. ("Atlas Air") from operating the Aircraft that is identified in the Complaint and directing Atlas Air to return the Aircraft, including its Airframe and three replacement Engines and one original Engine, and the Court having considered Wells Fargo's moving papers, including the Complaint, the Declaration of John Slattery dated February 26, 2003, the Supplemental Declaration of John Slattery dated March 5, 2003, and the Declaration of Adrian Farnell dated February 24, 2003, and the exhibits annexed thereto, and the accompanying Memorandum of Law, and Atlas Air having failed to submit any opposition papers, and the parties having entered into a Stipulation for the issuance of Temporary

MAR-28-2003 00:36    HON. BARBARA S. JONES    212 805 6191    P.03/04
MAR. 27. 2003 11.10AM                                NO. 2403    P. 4/5

Restraining Order on March 6, 2003, which was "so ordered" by the Court on March 6, 2003, and the Court having continued the Temporary Restraining Order, on consent of the parties, by Order dated March 12, 2003, and the Court having heard arguments of counsel for both parties at a hearing on March 27, 2003, and for good cause shown, it is hereby

ORDERED that:

1.    The terms used in this Order shall have the following meanings:

a)    "Aircraft" means the Airframe and the four Engines;

b)    "Airframe" means the Boeing model 747-200F aircraft (excluding any Engine or engine installed thereon) with Serial Number 23476;

c)    "Engines" mean the one original Engine with Serial No. 517877, and the three replacement Engines with Serial Nos. 517580, 517588 and 517965, respectively;

d)    "Parts" mean all appliances, parts, instruments, appurtenances, accessories, furnishings, and other equipment of whatever nature (other than complete Engines or engines) incorporated in the Airframe or an Engine (or removed therefrom, if title remains vested in the Lessor under § 9(d) of the Lease);

e)    "Manuals and Technical Records" mean all logs, manuals, certificates, data, and inspection, modification, repair, and overhaul records required by the Federal Aviation Administration (or any other Governmental authority having jurisdiction in the country where the Aircraft may be registered) to be maintained for the Airframe and each Engine;

2

2.    Atlas Air and its subsidiaries, officers, agents, employees, servants, attorneys, flight crews, and any other person who has actual notice of this Order are preliminarily restrained and enjoined, except as otherwise directed in writing by Wells Fargo from (a) operating or directing the operation of the Aircraft, other than for purposes of returning it to Wells Fargo; (b) filing or accepting a flight plan for the Aircraft, other than for purposes of returning it to Wells Fargo; (c) requesting or receiving from the ground control permission to taxi on an active runway the Aircraft, other than for purposes of returning it to Wells Fargo; (d) requesting or receiving clearance for the Aircraft, other than for purposes of returning it to Wells Fargo; and

3.    Atlas Air is directed to return the Airframe and Engines and all Parts, Manuals and Technical Records to Wells Fargo at Avborne Heavy Maintenance, 5800 Northwest 36th Street, Building 850, Miami International Airport, Miami, Florida, by the close of business today.

4.    Any and all of Wells Fargo's rights to seek damages are reserved; and it is

FURTHER ORDERED that, given Atlas Air's failure to show that it will suffer any harm absent the posting of a bond, and the undisputed facts that Atlas Air has not made the rental payment of $7,365,069.76 and is wrongfully detaining the Aircraft, no security in the form of a bond need be posted by Wells Fargo.

Dated:  New York, New York
        March 27, 2003

        Barbara S. Jones, U.S.D.J.

        11:45 am

3

33RYWELC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  WELLS FARGO NORTHWEST, N.A.,

4            Plaintiff,

5       v.                        03 Civil 1400 (BSJ)

6  ATLAS AIR, INC.,

7            Defendant.

8  ------------------------------x

9                                March 27, 2003
                                 10:15 a.m.
10

11 Before:

12        HON. BARBARA S. JONES,

13                               District Judge

14
                         APPEARANCES
15
   HOLLAND & KNIGHT LLP
16 Attorneys for Plaintiff
        195 Broadway
17      New York, New York
   JOHN M. TORIELLO, ESQ.,
18 ROSEANNA BASSLER DAL PRA, ESQ.,
        Of counsel
19

20 CAHILL GORDON & REINDEL
   Attorneys  for Defendant
21      80 Pine Street
        New York, New York
22 KEVIN J. BURKE, ESQ.,
        Of counsel
23

24

25

33RYWELC

```
1              THE COURT:  Wells Fargo versus Atlas Air.
2              Mr. Toriello for the plaintiff.
3              MR. TORIELLO:  Yes, your Honor.
4         This is a lawsuit that arises from a default under an
5    aircraft operating lease and this particular motion is for
6    preliminary injunction directing the return of the aircraft.
7         There is no opposition that has been submitted to the
8    motion.  It is undisputed that there was a default on January 4
9    in the payment of $7.3 million.  The lease was cancelled by
10   notice dated January 27.  There was a demand for the return of
11   the aircraft on February 7.
12        This lawsuit was filed on February 28, and to date the
13   aircraft has not been returned.
14        I would advise the court that last night at about six
15   o'clock I received a call from Mr. Burke, in which he agreed
16   that his client would return the aircraft.
17        I asked that that agreement be memorialized into a
18   stipulation which we could have so ordered.  He declined to
19   have that so ordered, have the preliminary injunction issued on
20   that basis.
21        I think there is really no dispute that we are
22   entitled to the return of the aircraft.  We have prepared an
23   injunction.  We advised this morning Precise Facility where the
24   aircraft and the records should be returned and we would hope
25   that Atlas Air would do what they represented to do last night,
```

33RYWELC

1    which is return the aircraft.

2             THE COURT:  All right.  Mr. Burke.

3             MR. BURKE:  Good morning, your Honor.  Mr. Burke from

4    Cahill Gordon.

5             I'm not quite sure why we are here today given that as

6    of yesterday when we learned mid-afternoon that the plaintiff

7    had determined to no longer negotiate a settlement of this

8    matter that I contacted my client, advised Mr. Toriello, fine,

9    on an hour's notice the plane can be delivered to your client.

10   It takes an hour to move the records from the building where

11   they are on to the aircraft.

12            THE COURT:  Whatever.  Mr. Burke, the bottom line is

13   your client could have delivered the airplane --

14            MR. BURKE:  We couldn't actually.  This morning, while

15   I was here in court, Mr. Toriello delivered for the first time

16   a letter telling me where at Miami International Airport his

17   client would like the aircraft delivered.  I can now deliver

18   it.

19            THE COURT:  Is there any opposition?

20            MR. BURKE:  There is no longer any irreparable harm,

21   your Honor.

22            THE COURT:  Well, they don't have the aircraft yet.

23            MR. BURKE:  All they have to do and what they have

24   done now is tell us where and they can have the aircraft.

25            There is no irreparable harm.  We are not refusing to

4

33RYWELC

1  return the aircraft.  We haven't been from March 5.

2         On March 4 I communicated to Mr. Toriello he could

3  have the aircraft back.  At that time the parties entered into

4  negotiations.  They didn't bear fruit.  During that time his

5  client agreed that the aircraft could stay where it was.  All

6  that time has passed.  It's ready to go, they are welcome to

7  it.  They have now told us at 9:20 or 9:30 this morning where

8  to put it.  We will do that.

9         THE COURT:  Mr. Toriello.

10        MR. TORIELLO:  Judge, we have a form of an order.  If

11 they were willing to stipulate to it so we could submit it to

12 the court we wouldn't have to come back if they failed to

13 deliver the aircraft, we won't be here.  They refused to

14 stipulate.

15        We just ask the court to issue the order and

16 presumably they will bring the aircraft over.

17        THE COURT:  There is no reason not to file a document

18 that you agreed to return the aircraft.

19        MR. BURKE:  No.  What my client is opposed to is

20 having an injunction and a contempt to an order that they

21 submitted.

22        It says immediately return the aircraft, it doesn't

23 say where, it doesn't say when.  What does that mean?  As I

24 walk out the door, am I supposed to hand him an aircraft?  I

25 don't know.

33RYWELC

1          But I'm certainly willing to sign an agreement with

2     him that we agreed to return the aircraft on an hour's notice

3     and he has apparently given us that notice at this point.

4          THE COURT:  How long is it going to take to return

5     this aircraft?

6          MR. BURKE:  To put the records on the plane it will

7     take about an hour.  They have now told us it is to be towed to

8     a different place on the field in Miami.  I do not know how

9     long it will take.  It's not days, it will happen today.

10         THE COURT:  Well, it hasn't happened yet.  Maybe you

11    haven't had the opportunity to do it.

12         I was under the impression that when they originally

13    asked for the return of the aircraft your client refused.

14    Maybe I'm wrong.

15         MR. BURKE:  No, that is not correct.  My client made

16    efforts to return the aircraft.  It was not ready to go, they

17    had hoped to be ready to go.  They entered into negotiations

18    about extending the lease to try to resolve the issues and

19    that's why it hasn't been returned to this date.  It became

20    ready to go back about March 5.  We told Mr. Toriello you could

21    have it back if there was not going to be a negotiation.  We

22    entered into negotiations.

23         THE COURT:  Mr. Toriello, here is what I am going to

24    do:

25         If you will just, and you can do this by fax, add to

6

33RYWELC

1    your preliminary injunction the exact terms of the turnover, if

2    you will, and by then I mean where and when the defendant has

3    to return the aircraft --

4             MR. BURKE:  Your Honor, I'm sorry, the when, if they

5    say immediately or if they say 10:00 o'clock, I don't know if I

6    can comply with that.  I would say it should be today is timely

7    enough.

8             MR. TORIELLO:  That's fine, your Honor.

9             THE COURT:  So by the close of business today will be

10   one of the provisions, and I gather we all know where so that

11   is not an issue, that will be in the order.  Right?

12            MR. TORIELLO:  That's correct, your Honor.

13            THE COURT:  Is there anything else we need to do in

14   order to clear up any vagueness or uncertainty here?

15            MR. BURKE:  No.  I think that solves the problem.

16            THE COURT:  Okay.  Since you won't consent to that, to

17   an injunction with respect to the turnover and I think they

18   have a right to the injunction, if you just modify what you had

19   previously come into court with and fax it to me, I will sign

20   that and docket it as the original.

21            In this case I'm not going to require a bond I guess

22   for two reasons:

23            One, I don't see how the defendant who is being

24   enjoined could be harmed and also I don't really think that in

25   terms of the timing it makes any sense.  Okay?

7

33RYWELC

1              MR. TORIELLO:  Thank you, your Honor.

2              THE COURT:  All right.

3              MR. BURKE:  Your Honor, there is one housekeeping

4     matter if I might trouble you a little further.

5              THE COURT:  Yes.

6              MR. BURKE:  The plaintiff believes the complaint was

7     served on my client the 11th of March, which would make our

8     answer due Monday the 31st.  Since settlement discussions have

9     broken down I asked Mr. Toriello this morning for an

10    adjournment of 20 days from that time because we had been

11    working on this getting resolved, and Mr. Toriello said he

12    couldn't do that on his own on a 20 day extension because there

13    was some bad blood between the parties.

14            I don't want to come back here to ask for the 20 days.

15    I would like to have that today.

16            MR. TORIELLO:  Your Honor, what I informed Mr. Burke

17    I'm sure I would give him some additional time, perhaps a week,

18    if he wanted 20 days I just had to check with my client first.

19            THE COURT:  Today is the 27th.  How about I will just

20    grant you until April 15.

21            MR. BURKE:  Thank you, your Honor.

22            THE COURT:  All right.

23            Anything else?

24            MR. BURKE:  No.

25            MR. TORIELLO:  I think that's it.

33RYWELC

```
1              THE COURT:  I'm not making findings of fact.  There
2     appears to be no contest with respect to likelihood of success
3     on the merits here and I don't see how there could be because
4     of the plain conditions of the agreement in this case, the
5     lease agreement and the mortgage agreement itself.
6              So having said that, just get that injunction over to
7     me and I will sign it.
8              MR. TORIELLO:  Thank you, your Honor.
9              THE COURT:  All right.  Thanks.
10             And I will add that it is just to dot our i's and
11    cross our t's, obviously to the extent, and it doesn't seem to
12    be the case, the defendant kept the airplane, considering the
13    defendant's financial condition and depreciation of the airline
14    while it is in their possession, I do believe there would be
15    irreparable harm.
16             Okay.  Thank you.
17             MR. TORIELLO:  Thank you, your Honor.
18                                          - - -
19
20
21
22
23
24
25
```

AUG-12-2002  06:06          JGE RICHARD CASEY                    212 805 7939    P.02/04

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SW HOLDING TRUST,                                    02 Civ. 5249 (RCC)

             Plaintiff,

    - against

SOUTHERN WINDS S.A.,                            **PRELIMINARY
                                                INJUNCTION ORDER**

             Defendant.

     This matter having been opened to the Court by the application of plaintiff, SW Holding Trust, for an Order, pursuant to Federal Rule of Civil Procedure 65, enjoining defendant Southern Winds S.A. ("Southern Winds") from operating the two Aircraft that are identified in the Complaint and directing Southern Winds to return the Aircraft to SW Holding Trust, and the Court having considered SW Holding Trust's moving and reply papers, including the Complaint and exhibits annexed thereto, the Affirmations of Chris Mueller dated July 8, 2002 and July 23, 2002, and the accompanying memoranda of law, and the Court having considered Southern Winds' opposition papers, and the Court having heard the arguments of counsel at a hearing on August 2, 2002, and for good cause shown, it is hereby

    ORDERED that:

    1.  Southern Winds and its subsidiaries, officers, agents, employees, servants, attorneys, flight crews, and any other person who has actual notice of this Order are preliminarily restrained and enjoined from (1) operating or

directing the operation of either of the two Aircraft identified in the Complaint, other than for purposes of returning them to SW Holding Trust in accordance with the terms of the Leases, (2) filing or accepting a flight plan for either of the Aircraft identified in the Complaint, other than for purposes of returning them to SW Holding Trust in accordance with the terms of the Leases; (3) requesting or receiving from the ground control permission to taxi on an active runway either of the two Aircraft identified in the Complaint, other than for purposes of returning them to SW Holding Trust in accordance with the terms of the Leases; (4) requesting or receiving clearance from the tower and/or departure control clearance for either of the two Aircraft identified in the Complaint to take off, other than for purposes of returning them to SW Holding Trust in accordance with the terms of the Leases; and

2. Southern Winds is directed to immediately return the Aircraft, together with their respective "Engines," "Parts" and "Aircraft Documentation" (as those terms are used in Clause 1.1 of each Lease, attached to the Complaint as Exhibits A and B), to SW Holding Trust in accordance with the terms of the Leases; and it is further

ORDERED that security in the form of a bond be posted by SW Holding Trust in the amount of US$100,000 on or prior to Friday, Aug 16, 2002 at 5 p.m.

2

DATED:    New York, New York
          August 12, 2002

                    SO ORDERED:

                    _Richard Casey_

                    _____
                    UNITED STATES DISTRICT JUDGE

                    # SO ORDERED

                    IT IS ORDERED that counsel to whom this Order
                    is sent is responsible for faxing a copy to
                    all counsel and retaining verification of such
                    in the case file. Do not fax such verification
                    to Chambers.

3

```
28CFSWID                                            1
```

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   -----------------------------x

 3   SW HOLDING TRUST

 4            Plaintiff,

 5            v.                          02 Civ 5249

 6   SOUTHERN WINDS, S.A.

 7            Defendant.

 8   -----------------------------x

 9                                 August 1, 2002
                                   4:30 p.m.
10
     Before:
11
                  HON. RICHARD CONWAY CASEY,
12
                                   District Judge
13
                     APPEARANCES
14
     HOLLAND & KNIGHT, LLP
15        Attorney for Plaintiff
     JOHN M. TORIELLO
16   MARC ANTONECCHIA
     JANET EPP-ROSENTHAL, CIT
17
     ALSTON & BIRD,LLP
18        Attorney for Defendant
     WILLIAM M. BARON
19   THATCHER A. STONE

20

21

22

23

24

25
```

28CFSWID                                        2

1          THE COURT:  Good morning.  Please be seated.

2          THE DEPUTY CLERK:  Your Honor, may I proceed?

3          THE COURT:  You may.

4          THE DEPUTY CLERK:  Your Honor, now before the Court

5    this morning SW Holding Trust against Southern Winds SA.  Is

6    the Plaintiff ready?

7          MR. TORIELLO:  Plaintiff is ready.

8          THE COURT:  Is the defendant ready?

9          MR. BARON:  Ready.

10         THE DEPUTY CLERK:  Counsel please identify yourself

11   for the record.

12         MR. TORIELLO:  My name is John Toriello with the firm

13   of Holland and Knight representing the Plaintiff.  With me

14   today is Mark Antonecchia and Janet Epp Rosenthal from CIT.

15         Thank you, your Honor.

16         MR. BARON:  Good morning, your Honor.  William Baron

17   of Alston & Bird, along with Thatcher A. Stone from my firm

18   and Daniel J. O'Neill also from my firm.

19         THE COURT:  Good morning, gentlemen.

20         MR. STONE:  Good morning, your Honor.

21         MR. O'NEILL:  Good morning, your Honor.

22         THE COURT:  Plaintiff, SW Holding Trust, brings this

23   motion for a preliminary injunction requiring defendant

24   Southern Winds, an Argentine air carrier, to ground certain

25   aircraft and return them to the plaintiff in accordance with

1   the terms of two lease agreements entered into by the parties.

2   It is undisputed that Southern Winds is continuing to operate

3   the aircraft despite being over eight months in arrears in its

4   rent payment and other obligations owed to plaintiff.  Even

5   under the strict standard applied to "mandatory" injunctions,

6   see Teamsters versus Miele Sanitation Co., 190 F Supp. 2d 625

7   (SDNY 2002), I conclude that such relief is warranted here.

8         First, plaintiff has made clear showing of likelihood

9   of success on the merits.  Defendant leased two Canadair

10  Regional Jet aircraft from the plaintiff and is obligated to

11  pay rent and maintenance reserves totalling over $130,000 per

12  aircraft per, month as well as to provide monthly consolidated

13  statements of income.  See agreement Section 5 and 8.2(b).

14  Since November 30th, 2001, defendant has failed to make a

15  single payment or to proffer the required financial

16  documentation.  Pursuant to the clear terms of the agreement,

17  such failure constitutes an event of default which allows

18  plaintiff to retake possession of the aircraft.  See

19  Agreements Section 13.2.  Although defendant argues that the

20  lease agreements should be characterized as forming a security

21  interest pursuant to Article 9 of the Uniform Commercial Code,

22  I note that the UCC also permits a secured party to take

23  possession of collateral upon default.  See UCC Section 9-609.

24  Defendant does not and indeed cannot seriously challenge that

25  plaintiff is entitled to retake the aircraft.  See opposition

28CFSWID                                    4

1    memo at six.

2           Rather, the crux of the dispute centers on whether

3    the plaintiff will suffer irreparable harm absent any an

4    injunction.  Defendants suggests that the plaintiff can be

5    compensated for any harm in money damages.  However, it is

6    undisputed that the defendant has not paid rent or maintenance

7    reserves since November.  Notably defendant fails to give any

8    assurance that it will ever do so and acknowledges that it's

9    financial situation is precarious.  See Drobbin versus Nicolet

10   Investment Corp., 631 F. Supp. 860, SDNY 1986.  Granting

11   preliminary injunction where the defendant would not or could

12   not respond fully for damages.  Moreover, as set forth in the

13   Mueller affidavit, the continued use of the aircraft decreases

14   their resale price and it brings them closer to required

15   maintenance and part replacement.  Those costs were intended

16   to be covered by the maintenance reserve which defendant has

17   failed to pay.  Nevertheless, defendant continues to put

18   additional hours of use on the aircraft.

19          Defendant now argues that it should be allowed to

20   keep the plains for 75 to 90 days, when it will replace them

21   with cheaper models.  This would leave defendant in the

22   catbird seat, in essence granting the free use of the aircraft

23   for an extended period, again, with no guarantee of eventual

24   payment.  There is simply no value basis for doing so, because

25   defendant does not have even an arguable right to continued

1    possession of the aircraft.  Defendant has had eight months to

2    make payments or to return the planes.  It has done neither.

3           Therefore, I will grant the preliminary injunction,

4    enjoining defendant from operating the aircraft, and requiring

5    them to return the planes to the plaintiff.  Defendant argues

6    that a large bond is in order because it has acquired

7    approximately $1 million in equity in the aircraft.  See

8    Maggio declaration at paragraph 24.  Considering that Southern

9    Winds owes plaintiff termination value of more than $17

10   million per plane pursuant to the agreements, defendant's

11   argument holds little merit.  Therefore, I will impose a

12   nominal bond in the amount of $100,000.

13          Gentlemen, I believe that concludes our business,

14   unless either counsel desires to be heard on something else.

15          MR. TORIELLO:  Your Honor, this is John Toriello for

16   the plaintiff.  May we submit an order this afternoon?

17          THE COURT:  You may.

18          MR. TORIELLO:  Thank you, your Honor.

19          THE COURT:  All right, gentlemen, court will stand in

20   recess.

21          MR. BARON:  Thank you, your Honor.

22          THE DEPUTY CLERK:  All rise.

23                              oOo

24

25