UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
JUL 1 2008
CHAMBERS OF
RICHARD J. HOLWELL

EAST TRUST – SUB 12,

                                        Plaintiff,

        - against -

AVOLAR AEROLINEAS, S.A. DE C.V.,

                                        Defendant.

08 Civ. 5698 (RJH)

**PRELIMINARY INJUNCTION ORDER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7 · 1 · 2008

        This matter having been opened to the Court by the application of plaintiff EAST Trust – Sub 12 ("EAST Trust") for an Order, pursuant to Federal Rule of Civil Procedure 65, enjoining defendant Avolar Aerolineas, S.A. de C.V. ("Avolar") from operating the Aircraft identified in the Complaint and directing Avolar to return the Aircraft to EAST Trust, and the Court having considered EAST Trust's moving papers, including the Complaint and exhibits annexed thereto, the Declaration of Brian DiSanto, dated June 24, 2008, the Declarations of Arturo Sort de Sanz, dated June 23 and 29, 2008, and exhibits annexed thereto, and the accompanying memorandum of law, and there being no opposition by Avolar, and the Court having heard the argument of counsel at a hearing on June 30, 2008, and for good cause shown, it is hereby

        ORDERED, that:

        1.  Avolar and its subsidiaries, officers, agents, employees, servants, attorneys, flight crews, and any other person who has actual notice of this Order are preliminarily restrained and enjoined from (a) operating or directing the operation of a certain Boeing 737-3B7 Aircraft, bearing manufacturer's serial number 23377, which includes its respective Engines, Parts, and Aircraft Records (as those terms are

defined in Schedule 1 to this Order) (hereinafter, collectively referred to as the "Aircraft"), other than for purposes of returning it to EAST Trust, but Avolar shall maintain the Aircraft as required by the terms of the Amended and Restated Aircraft Lease Agreement between the Plaintiff and the Defendant dated as of May 2, 2006 (hereinafter, the "Lease"), (b) filing or accepting a flight plan for the Aircraft, other than for purposes of returning it to EAST Trust; (c) requesting or receiving from the ground control permission to taxi on an active runway the Aircraft, other than for purposes of returning it to EAST Trust; and (d) requesting or receiving clearance from the tower and/or departure control for the Aircraft identified in the Complaint to take off, other than for purposes of returning it to EAST Trust;

2. Avolar and its subsidiaries, officers, agents, employees, servants, attorneys, flight crews, and any other person who has actual notice of this Order are directed to immediately return the Aircraft, which includes the Airframe, the Engine, the Parts, and the Aircraft Records (as defined in Schedule 1 to this Order) to EAST Trust by delivering the Aircraft at the facilities of Southern California Aviation in Victorville, California, or pursuant to other written direction given by EAST Trust;

3. Avolar and its subsidiaries, officers, agents, employees, servants, attorneys, flight crews, and any other person who has actual notice of this Order and control of the Aircraft are preliminary enjoined and restrained from performing a replacement of the horizontal stabilizer jackscrew on the Aircraft, unless EAST Trust authorizes such work in a written and signed authorization; and it is further

2

ORDERED, that security in the form of a bond be posted by EAST Trust in the amount

of $ 25,000 on or prior to July 3, 2008, at 5:00 ~at~ p.m.


DATED:     New York, New York
           July 1, 2008

                    SO ORDERED:

                    _____
                    UNITED STATES DISTRICT JUDGE

## SCHEDULE 1

"**Aircraft**" means (i) the Airframe, together with, as the context requires, (ii) the Engines whether or not installed thereon, (iii) all Parts whether or not installed thereon and (iv) the Aircraft Records.
[Capitalized terms are defined herein.]

"**Airframe**" means that certain Boeing 737-3B7 airframe bearing manufacturer's serial number 23377, and (except as otherwise provided in Clause 8.3 of the Lease) any and all Parts incorporated or installed therein or attached thereto or removed therefrom, so long as title thereto remains vested in EAST Trust – Sub 12 in accordance with the terms of Clause 8 of the Lease. [Capitalized terms are defined herein. Clause 8 of the Lease is annexed hereto as Exhibit A to this schedule.]

"**Engine**" or "**Engines**" means (a) each of the two CFM International, Inc. CFM56-3B2 turbofan engines bearing manufacturer's serial numbers 721127 and 720831 whether or not from time to time installed on the Airframe; (b) any engine which may from time to time be substituted or be a replacement for any such engine pursuant to Clause 10.2 of the Lease (annexed hereto as Exhibit B to this schedule); and (c) except as otherwise provided in Clause 8.3 of the Lease, any and all Parts incorporated or installed in or attached thereto or removed therefrom, so long as title thereto shall remain vested in Lessor in accordance with the terms of Clause 8 of the Lease.
[Capitalized terms are defined herein. Clause 8 of the Lease is annexed hereto as Exhibit A to this schedule.]

"**Parts**" means any and all appliances, parts, instruments, accessories, furnishings, seats and other equipment of whatever nature (other than complete Engines or engines), which (a) are from time to time incorporated or installed in or attached to the Airframe or an Engine, or (b) having been so installed or attached, are later removed therefrom, so long as title thereto remains vested in Lessor in accordance with Clause 8 of the Lease.
[Capitalized terms are defined herein. Clause 8 of the Lease is annexed hereto as Exhibit A to this schedule.]

"**Aircraft Records**" means (i) the manuals, log books, records and other documents relating to the Aircraft described in Appendix III to the Certificate of Acceptance (annexed hereto as Exhibit C to this schedule), and (ii) all records, logs and other materials required by the United States Federal Aviation Administration ("FAA") and/or the Administrator of the United States Federal Aviation Administration, the Department of Civil Aviation (Direccion General de Aeronautica Civil) of Mexico ("DGAC"), the Mexican Air Navigation Service (Servicios a la Navegacion en el Espacio Aereo Mexicano) of Mexico ("SENEAM"), or any person, governmental department, bureau, commission or agency succeeding to the functions of any of the foregoing.

or entity designated in writing as Lessor's agent or representative by Lessor to visit and inspect (at any reasonable time, provided that such inspection shall not interfere with Lessee's operational commitments) the Aircraft, its condition, use and operation and the Aircraft Records maintained in connection therewith and, at Lessee's expense, to make copies of such records as Lessor or Lessor's agent or representative may reasonably designate. Lessor shall have no duty to make any such inspection and shall not incur any liability or obligation by reason of not making any such inspection.

## 8.    REPLACEMENT AND POOLING OF PARTS; ALTERATIONS, MODIFICATIONS AND ADDITIONS

### 8.1    Replacement of Parts

Lessee, at its own cost and expense, shall, as soon as practicable but in any event within 30 days, replace all Parts which may from time to time become worn out, lost, stolen, destroyed, seized, confiscated, damaged beyond repair or permanently rendered unfit for use for any reason whatsoever. In addition, in the ordinary course of maintenance, service, repair, overhaul or testing, Lessee may remove any Part, whether or not worn out, lost, stolen, destroyed, seized, confiscated, damaged beyond repair or permanently rendered unfit for use; provided that Lessee shall promptly replace such Part. All replacement Parts shall be free and clear of all Liens and shall be in as good operating condition as, and shall have a value and utility at least equal to, the Parts replaced, assuming such replaced Parts were in the condition and repair required to be maintained by the terms hereof and shall be owned by Lessee and capable of vesting in Owner free of all Liens.

### 8.2    Title to Replaced and Replacement Parts

All Parts removed from the Airframe and the Engines shall remain the property of Lessor and subject to this Lease, any Superior Lease and any Mortgage, no matter where located, until such Parts are replaced by Parts to which title shall have vested in Lessor and which have been incorporated or installed in or attached to the Airframe or an Engine and which meet the requirements for replacement Parts specified above. Immediately upon any replacement Part becoming incorporated, installed or attached as provided above, without further act, (a) title to the replaced Part shall thereupon vest in Lessee, free and clear of all Lessor Liens; (b) subject to the provisions of Clause 8.5, such replaced Part shall no longer be deemed a Part hereunder; (c) title to the replacement Part shall thereupon vest in Lessor; and (d) subject to the provisions of Clause 8.5, such replacement Part shall become subject to this Lease, any Superior Lease and any Mortgage and be deemed to be a Part hereunder to the same extent as the Parts originally incorporated or installed in or attached to the Airframe and the Engines.

### 8.3    Pooling

Any Part removed from the Airframe or any Engine as provided in Clause 8.1 may be subjected by Lessee to a normal pooling arrangement that is customary in the airline industry entered into in the ordinary course of Lessee's business with the Authorized Maintenance Performer; provided that a part replacing such removed Part shall be incorporated or installed in or attached to such Airframe or Engine in accordance with

- 20 -



ALL-STATE LEGAL®

EXHIBIT

A

Clauses 8.1 and 8.2 as promptly as possible after the removal of such removed Part. Parts removed from the Airframe or Engine may also be incorporated or installed in or attached to an airframe or engine subject to any Other Lease provided that such Part is replaced in accordance with the provisions of this Clause 8.

Any replacement part when incorporated or installed in or attached to the Airframe or an Engine from time to time may be owned by another air carrier, the Authorized Maintenance Performer or subject to a normal pooling arrangement; provided that Lessee, at its expense, as promptly thereafter as possible either (i) causes title to such replacement part to vest in Lessor in accordance with Clause 8.2 by Lessee acquiring title thereto for the benefit of Lessor, free and clear of all Liens, or (ii) replaces such replacement part by incorporating or installing in or attaching to the Airframe or an Engine a further replacement part owned by Lessee free and clear of all Liens which shall thereupon become subject to this Lease, any Superior Lease and any Mortgage and be deemed to be a "Part" hereunder.

## 8.4    Alterations, Modifications and Additions

Except as provided in this Clause 8 and in Clause 6.6, Lessee shall not make any alteration, modification or addition to the Airframe or any of the Engines except such alterations, modifications or additions the cost (including labor costs of installation) of which is less than $50,000 and which can be removed from the Aircraft without diminishing or impairing the value of the Aircraft.

## 8.5    Title to Parts

Subject to the provisions hereof, title to all Parts incorporated or installed in or attached or added to the Aircraft or any part thereof as the result of any alteration, modification or addition shall, without further act, vest in Lessor and become subject to this Lease, any Superior Lease and any Mortgage; provided, however, that so long as no Default or Event of Default shall have occurred and be continuing, at any time during the Term, Lessee may remove any Part from the Aircraft or any part thereof, provided that (a) such Part is in addition to, and not in replacement of or in substitution for, any Part originally incorporated or installed in or attached to the Aircraft or any part thereof at the time of delivery thereof hereunder or any Part in replacement of, or substitution for, any such original Part; (b) such Part is not required to be incorporated or installed in or attached or added to the Aircraft or any part thereof pursuant to the terms hereof; and (c) such Part can be removed from the Aircraft or any part thereof without diminishing or impairing the value, utility or airworthiness which the Aircraft or any part thereof would have had at such time had such addition not occurred. Upon the removal by Lessee of any such Part as above provided, title thereto shall, without further act, vest in Lessee free and clear of all Lessor Liens and such Part shall no longer be deemed a Part hereunder. Title to any Part not removed by Lessee as above provided prior to the return of the Aircraft to Lessor hereunder shall remain with Lessor and subject to this Lease, any Superior Lease and any Mortgage.

- 21 -

## 10.2 With Respect to an Engine

Upon the occurrence of an Event of Loss with respect to an Engine under circumstances in which there has not occurred an Event of Loss with respect to the Aircraft, Lessee shall forthwith (and in any event within two Business Days after such occurrence) give Lessor written notice thereof and Lessee shall replace such Engine as soon as reasonably possible (and, in any event, within 60 days following such Event of Loss) by duly conveying to Lessor, free and clear of all Liens, title to another engine of the same or an improved model and suitable for installation and use on the Airframe with the remaining Engine, which engine shall have a value and utility at least equal to, and be in as good operating condition as, the Engine with respect to which such Event of Loss shall have occurred, assuming such Engine was of the value and utility and in the condition and repair as required by the terms hereof immediately prior to the occurrence of such Event of Loss. Such replacement engine shall be deemed an "Engine" as defined herein for all purposes hereunder. Lessee agrees promptly to notify Lessor of any such substitution, provide Lessor with an officer's certificate demonstrating full compliance with this Clause 10.2 and to take such action and execute such documents, including a warranty bill of sale, as Lessor may reasonably request in order that title to any such replacement Engine shall be duly and properly vested in Lessor, and to ensure that such replacement Engine is covered by any Mortgage and that the rights of the Mortgagee in respect of such replacement Engine are duly and properly perfected and protected, and that any such replacement Engine shall be duly and properly leased hereunder to the same extent as any Engine replaced thereby. Lessor shall take such action, or shall cause such action to be taken, and shall execute, or shall cause to be executed, such documents as are reasonably necessary to transfer to Lessee, subject to the rights of the insurers, all Lessor's right, title and interest, "as-is, where is", without recourse or warranty, express or implied in or to the Engine replaced pursuant to the preceding sentence to Lessee or its designee. At the same time as title to the new Engine is vested in Lessor, the Maintenance Reserves attributable to this Engine shall be adjusted to reflect the status of the new Engine.

## 10.3 Application of Payments from Government Entities

Payments received by Lessor or Lessee from any Government Entity with respect to an Event of Loss resulting from the condemnation, confiscation or seizure of, or requisition of title to or use of the Aircraft, the Airframe or any of the Engines, shall, as between Lessor and Lessee, be retained by Lessor, if received by Lessor, or promptly paid over to Lessor, if received by Lessee and shall be applied in satisfaction of Lessee's payment obligations under the Relevant Documents (including, without limitation, under Clause 10.1). If all amounts payable by Lessee to Lessor, any Indemnitee and/or any Tax Indemnitee pursuant to the Relevant Documents (including, without limitation, under Clause 10.1) have been received by the relevant person in full, Lessor shall promptly remit to Lessee any payments described at the beginning of this Clause 10.3 exceeding such amounts payable to Lessor, any Indemnitee and/or any Tax Indemnitee pursuant to the Relevant Documents. Payments received by Lessor or Lessee from any Government Entity with respect to a requisition of use not constituting an Event of Loss during the Term of the Aircraft, the Airframe or any of the Engines shall be paid to (or retained by) Lessee, and Lessee's obligation to make all payments of Rent, Maintenance Reserves and other amounts due under the Relevant Documents shall continue undiminished. Payments

- 26 -

EXHIBIT B

**APPENDIX III**
**To Certificate of Acceptance**

Boeing 737-3B7 MSN 23377

**AIRCRAFT RECORDS**

See attached four (4) pages

III

EXHIBIT

*C*

ALL-STATE LEGAL®

B737-300
Record Box Inventory
MSN 23377

| Box | Contents |
|-----|----------|
| #1 | 1995 US Airways, Historic maintenance records |
| #2 | 1995 US Airways, Historic maintenance records |
| #3 | 1995 US Airways, Bridge Check - TRAMCO.  Log Pages, Non-Routine, Miscellaneous paperwork. |
| #4 | 1996 Historic maintenance records, Log pages, Non-Routine, Miscellaneous paperwork. |
| #5 | 1996 # 5 "C" check, Miscellaneous paperwork |
| #6 | 1997 Historic maintenance records, Log pages, Non-Routine Miscellaneous paperwork. |
| #7 | 1997 # 6 "C" check PHX |
| #8 | 1997  # 6 "C" check PHX |
| #9 | 1998 Historic maintenance records, Log pages, Non-Routine, Miscellaneous paperwork |
| #10 | 1998 # 7"C" check, MZJ |
| #11 | 1998 # 7 "C" check, MZJ |
| #12 | 1999 Historic maintenance records, Log pages, Non-Routine, Miscellaneous paperwork. |

1

B737-300
Record Box Inventory
MSN 23377

| | |
|---|---|
| #13 | 1999  # 8 "C" check, YWG |
| #14 | 1999  # 8 "C" check, YWG |
| #15 | 2000 Historic maintenance records, Log pages, Non-Routine. |
| #16 | 2000 Historic maintenance records, Miscellaneous paperwork |
| #17 | 2000  # 9 "C" check, MCN |
| #18 | 2000  #9 "C" check, MCN |
| #19 | 2000 Historic maintenance records |
| #20 | 2001 Historic maintenance records |
| #21 | 2001 Non-routine maintenance records |
| #22 | 2001 C-10 check/maintenance records |
| #23 | 2001 C-10 check/maintenance records |
| #24 | 2002 Non-routine maintenance records |
| #25 | 2002 Historic maintenance records |
| #26 | 2002 C-11 check/maintenance records |
| #27 | 2002 C-11 check/maintenance records |
| #28 | 2002 C-11 check/maintenance records |
| #29 | 2003 Non-routine maintenance records |

B737-300
Record Box Inventory
MSN 23377

| | | |
|---|---|---|
| #30 | 2003 Historic maintenance records |
| #31 | 2004 Historic maintenance records |
| #32 | 2004 C-12 check/maintenance records |
| #33 | 2004 C-12 check/maintenance records |
| #34 | 2004 C-12 check/maintenance records |
| #35 | 2004 C-12 check/maintenance records |
| #36 | 2004 C-12 check/maintenance records |
| #37 | 2004 Non-routine maintenance records |
| #38 | 2005 C-13 check/maintenance records |
| #39 | 2005 C-13 check/maintenance records |
| #40 | 2005 C-13 check/maintenance records |
| #41 | 2005 C-13 check/maintenance records |
| #42 | 2005 Non-routine maintenance records |
| #43 | 2005 "B" check maintenance records |
| #44 | 2005/2006 Historic maintenance records |
| #45 | 2006 C-24 check/maintenance records |
| #46 | 2006 C-24 check/maintenance records |
| #47 | 2006 C-24 check/maintenance records |

3

B737-300
Record Box Inventory
MSN 23377

| | |
|---|---|
| #48 | 2006 C-24 check/maintenance records |
| #49 | CPCP Bk's 1-3, Fuel Qty Manual, Quick Ref Handbook, Wt & Bal manual, Boeing Readiness Log, AOM, AFM/TCAS Bk's 1-3, Burn Specifications, STC's |
| #50 | Appliance AD's Bk 1 & 2, Airframe AD's Bk's 1-8 |
| #51 | Airframe AD's Bk's 9 & 10, MLG Documents, Major Repairs Bk's 1-4 |
| #52 | ESN 721127 Historical Records |
| #53 | ESN 721127 Historical Records |
| #54 | ESN 720831 Historical Records |
| #55 | Engineering Orders Chapters 00-31 |
| #56 | Engineering Orders Chapters 32-80 |
| #57 | Component Certifications |
| #58 | Component Certifications |
| #59 | Component Certifications |
| #60 | Lease Delivery Reports Bk's 1 & 2 Current Shop Records for Engines & APU. CD's: NDT, IPC, TEMP REVISIONS, AWA MPD X REF, WBM, SRM, SSM, BOEING AMM, CFM56-3 DATA, GALLEY MANUALS, AOM, ORH, AFM, SWPM & WDM. |

4