MICROFILMED JUN 27 2008 -9 00 AM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EAST TRUST – SUB 12,

                    Plaintiff,

- against -

AVOLAR AEROLINEAS, S.A. DE C.V.,

                    Defendant.

---

08 Civ. 5698 (NSH)

**ORDER TO SHOW CAUSE
WITH TEMPORARY RESTRAINTS**

U.S. DISTRICT COURT FILED JUN 2 6 2008 S.D. OF N.Y.

This matter having been opened to the Court by the application of plaintiff EAST Trust – Sub 12 ("EAST Trust") for an Order requiring defendant Avolar Aerolineas, S.A. de C.V. ("Avolar") to show cause why a temporary restraining order and preliminary injunction should not be entered pursuant to Rule 65 of the Federal Rules of Procedure, and the Court having considered the Declaration of Brian DiSanto, dated June 24, 2008, the Declaration of Arturo Sort de Sanz, dated June 23, 2008, and exhibits attached thereto, the accompanying Memorandum of Law, and the Complaint, and for good cause shown, it is hereby

ORDERED, that Avolar is to show cause before this Court, at Room 17B, United States Courthouse, 500 Pearl Street, New York, NY 10007, on the 30th day of June, 2008, at 2:00 pm, ~~or as soon thereafter as counsel may be heard~~ (the "Show-Cause Hearing"), why an Order should not be issued pursuant to Rule 65 of the Federal Rules of Civil Procedure:

1. enjoining, during the pendency of this action, Avolar and its subsidiaries, officers, agents, employees, servants, attorneys, flight crews, and any other person who has actual notice of this Order from (a) operating or directing the operation of a certain Boeing 737-3B7 Aircraft, bearing manufacturer's serial number 23377,

which includes its respective Engines, Parts, and Aircraft Records (as those terms are defined in Schedule 1 to this Order) (hereinafter, collectively referred to as the "Aircraft"), other than for purposes of returning it to EAST Trust, but Avolar shall maintain the Aircraft as required by the terms of the Amended and Restated Aircraft Lease Agreement between the Plaintiff and the Defendant dated as of May 2, 2006 (hereinafter, the "Lease")., (b) filing or accepting a flight plan for the Aircraft identified in the Complaint, other than for purposes of returning it to EAST Trust; (c) requesting or receiving from the ground control permission to taxi on an active runway the Aircraft identified in the Complaint, other than for purposes of returning it to EAST Trust; and (d) requesting or receiving clearance from the tower and/or departure control for the Aircraft identified in the Complaint to take off, other than for purposes of returning it to EAST Trust; and

2. directing Avolar and its subsidiaries, officers, agents, employees, servants, attorneys, flight crews, and any other person who has actual notice of this Order and control of the Aircraft to immediately return the Aircraft, which includes the Airframe, the Engine, the Parts, and the Aircraft Records (as defined in Schedule 1 to this Order); and it is further

ORDERED, that sufficient reason having been shown therefore, pending the Show Cause Hearing, pursuant to Rule 65 of the Federal Rules of Civil Procedure, Avolar and its subsidiaries, officers, agents, employees, servants, attorneys, flight crews, and any other person who has actual notice of this Order is hereby temporarily restrained and enjoined from:

1. operating or directing the operation of the Aircraft identified in the Complaint, other than for purposes of returning it to EAST Trust, but Avolar shall maintain the Aircraft as required by the Lease;

2. filing or accepting a flight plan for the Aircraft identified in the Complaint, other than for purposes of returning it to EAST Trust;

3. requesting or receiving from the ground control permission to taxi on an active runway the Aircraft identified in the Complaint, other than for purposes of returning it to EAST Trust; and

4. requesting or receiving clearance from the tower and/or departure control clearance for the Aircraft identified in the Complaint to take off, other than for purposes of returning it to EAST Trust; and it is further

ORDERED, that security in the form of a bond be posted by EAST Trust in the amount of $_____ prior to _____, 2008, at _____; and it is further [struck through]

ORDERED, that service of a copy of this Order, the Complaint, and moving papers ~~upon Avolar's agent, C.T. Corporation, 111 8th Ave #13, New York, New York 10011, and on Avolar~~ in a manner consistent with the requirements of the underlying lease agreement by June 27, 2008 no later than 2:00 p.m. EDT ~~at Goldsmith 38-101, Polanco Chapultepec, 11560, Mexico D.F., Mexico, by personal service or by a recognized courier service, on before \_\_\_\_\_, 2008, at \_\_\_\_\_ shall be~~ shall be deemed good and sufficient service thereof; and it is further

ORDERED, that Avolar shall serve answering papers, if any, to be received on or before June 30, 2008, at 9 pm EDT, in a manner consistent with the terms of the underlying lease agreement ~~by a recognized courier service and facsimile (212-385-9010) to Holland & Knight LLP, 195 Broadway, New York, New York 10007, Attention: John M. Toriello, Esq.~~; and it is further

3

~~ORDERED, that EAST Trust shall serve reply papers, if any, on or before _____, 2008, at _____, by service to C.T. Corporation and Avolar.~~

DATED:  New York, New York
        June 26, 2008

TIME OF ISSUANCE:  5:15 p.m. EDT

SO ORDERED:

_____
UNITED STATES DISTRICT JUDGE

4

# Schedule 1
## Definitions and Construction

1. **Definitions**

   Unless the context requires otherwise, the following terms have the following meanings for all purposes of the Lease and such meanings shall be equally applicable to both the singular and the plural forms of the terms defined:

   **"Additional Insureds"** means Lessor, each Member of Lessor, the Servicer, any Financier, any Mortgagee and their respective officers, directors, servants, agents and employees and the successors and assigns of each of the foregoing.

   **"Additional Post-Delivery Authorizations and Filings"** means, collectively, the following:

   (a)   a permanent Certificate of Registration (*Oficio de Asignación de Matrícula*) for the Aircraft issued by the Department of Civil Aviation (*Dirección General de Aeronáutica Civil*);

   (b)   a Certificate of Registration and Nationality (*Certificado de Matrícula*) for the Aircraft issued by the Department of Civil Aviation (*Dirección General de Aeronáutica Civil*); and

   (c)   definitive filing of this Lease Agreement (including the Certificate of Acceptance) with the Mexican Aeronautical Registry (*Registro Aeronáutico Mexicano*), (duly notarized and accompanied by a Spanish translation thereof certified by a Mexican court registered translator as true and correct) to the Mexican Aeronautical Registry (*Registro Aeronáutico Mexicano*) and the payment of all fees and Taxes in connection with such filing by Lessee.

   **"Administrative Agent"** means Phoenix American Financial Services, Inc.

   **"Aeronautics Authority"** means, during the FAA Registration Period, the FAA, and at all other times during the Term, as the context requires, the DGAC OR SENEAM, or any person, governmental department, bureau, commission or agency succeeding to the functions of the foregoing and, if different, the civil aviation authority of the State of Registration.

   **"Aircraft"** means (i) the Airframe, together with, as the context requires, (ii) the Engines whether or not installed thereon, (iii) all Parts whether or not installed thereon and (iv) the Aircraft Records.

   **"Aircraft Records"** means (i) the "Aircraft Records" as defined in the Certificate of Acceptance and (ii) all records, logs and other materials referred to in Clause 6.6(a)(ii).

   **"Airframe"** means that certain Boeing 737-3B7 airframe bearing manufacturer's serial number 23377 more particularly described in the Certificate of Acceptance (except for any engines or Engines installed thereon), and (except as otherwise provided in Clause 8.3) any

**"DER Part"** means Parts repaired under a repair scheme approved by a Designated Engineering Representative ("DER") licensed by the FAA and not employed by the manufacturer of such Part.

**"Deregistration Authorizations and Filings"** means, collectively, the FAA Standard Form 14 issued by the FAA evidencing cancellation of the United States registration of the Aircraft and such other authorizations, filings, registrations and other like action made with or to be obtained from any Government Entity as Lessor may reasonably request to cause the cancellation of the United States registration of the Aircraft.

**"Deregistration Power of Attorney"** means either a power of attorney issued, or as the context may require, to be issued by Lessee substantially in the form set forth in Schedule 8 or, at the request of Lessor, a power of attorney governed by Mexican law that is issued, or as the context may require, to be issued by Lessee in a form and substance acceptable to Lessor.

**"DGAC"** means the Department of Civil Aviation (Dirección General de Aeronáutica Civil) of Mexico, or any person, department, bureau, commission or agency succeeding to the function of the foregoing.

**"Discount Rate"** means, in relation to any period for which the same is to be calculated pursuant to Clause 16.1(b)(i), the rate of interest specified in the Federal Reserve Statistical Release H.15(519) Selected Interest Rates for Treasury Bills having at the time of such calculation a maturity equal to, or as close as possible to, such period.

**"Documentation Fee"** has the meaning specified in paragraph 6 of Part 1 of Schedule 3.

**"Dollars"** and **"$"** means, whether capitalised or not, the lawful currency of the United States of America.

**"Engine"** means: (a) each of the two CFM International, Inc. CFM56-3B2 turbofan engines more particularly described in the Certificate of Acceptance, whether or not from time to time installed on the Airframe; (b) any engine which may from time to time be substituted or be a replacement for any such engine pursuant to Clause 10.2; and (c) except as otherwise provided in Clause 8.3, any and all Parts incorporated or installed in or attached thereto or, so long as title thereto shall remain vested in Lessor in accordance with the terms of Clause 8, removed therefrom.

**"Engine Agreed Value"** has the meaning specified in Schedule 10.

**"Engine Hour"** means, in relation to any Engine, the period measured by reference to each hour or part of an hour elapsing from the moment the wheels of any airframe on which such Engine is installed leave the ground on take off until the wheels of such airframe next touch the ground on landing.

**"Engine LLP Reserve"** means the aggregate of all amounts received by Lessor pursuant to paragraph 3.1(a) of Part 1 of Schedule 3 less the aggregate of all amounts repaid to Lessee from such amounts.

**"MPD Document"** means the Manufacturer's approved Maintenance Planning Document for aircraft of the same type as the Aircraft.

**"MRB Document"** means the Boeing 737-300 Maintenance Review Board Document.

**"Original Lease"** means the Aircraft Lease Agreement dated as of April 7, 2006 between Lessor and Lessee with respect to the Aircraft.

**"Other Leases"** shall mean any other aircraft or engine lease agreement (excluding this Lease and the Original Lease) from time to time entered into between Lessor or any person managed by the Servicer, as lessor, and Lessee, as lessee.

**"Owner Trustee"** means Wilmington Trust Company.

**"Parts"** means any and all appliances, parts, instruments, accessories, furnishings, seats and other equipment of whatever nature (other than complete Engines or engines), which (a) are from time to time incorporated or installed in or attached to the Airframe or an Engine, or (b) having been so installed or attached, are later removed therefrom, so long as title thereto remains vested in Lessor in accordance with Clause 8.

**"Performance Restoration"** shall mean, with respect to an Engine, accomplishment of a overhaul level workscope pursuant to the then current CFM Workscope Planning Guide on each of the core Engine modules (i.e. HPC, combustor or HPT) and a performance level workscope pursuant to the then current CFM Workscope Planning Guide on the other Engine modules (i.e. fan and booster, LPT and gearbox). Any Performance Restoration shall be to a 5,300 Cycle minimum build standard for the entire Engine.

**"Permitted Liens"** means, in connection with the Aircraft or any part thereof, (a) the respective rights of the parties hereunder; (b) Liens for taxes, assessments or other governmental charges either not yet due (but excluding any such Lien for taxes, assessments, or other governmental charges that are not due as a result of a rescheduling of the due date thereof that was not consented to in writing by Lessor) or being contested in good faith (and for the payment of which adequate reserves have been provided) by appropriate proceedings so long as such proceedings do not involve any danger of the sale, forfeiture, loss or loss of use of the Aircraft, the Airframe or any Engine or any interest therein; (c) materialmen's, mechanics', workers', repairers', employees', or other like Liens arising in the ordinary course of business for amounts the payment of which is either not yet due or is being contested in good faith (and for the payment of which adequate reserves have been provided) by appropriate proceedings so long as such proceedings do not involve danger of the sale, forfeiture or loss of use of the Aircraft, the Airframe or any Engine or any interest therein; (d) any other Liens with respect to which Lessee shall have provided security in form and amount acceptable to Lessor; (e) the Lien of any Mortgage or any other Lien created pursuant to the Financing Documents; and (f) Lessor Liens.

**"PMA Part"** means a Part procured from a source having parts manufacturing authority issued by the FAA, JAA or other Aeronautics Authority, but not manufactured by the applicable original equipment manufacturer.